## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 12-10197 |
| | ) | |
| TRACY LAMARK KING, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Before the court is defendant's motion pursuant to 28 U.S.C. § 2255. (Doc. 57). The government has responded. (Doc. 58). Defendant has not filed a reply and the time for doing so has expired.

In addition to the parties' briefs, the court has considered the record of the case including the indictment (Doc. 13), defendant's petition to enter a plea of guilty (Doc. 30), the plea agreement (Doc. 31), the presentence report (Doc. 32), defendant's motion for downward departure and government's response (Docs. 38 and 39), transcripts of the Rule 11 hearing and sentencing hearing (Docs. 51 and 52), and the mandate of the Tenth Circuit on direct appeal. (Doc. 56).

Defendant's §2255 motion claims that he received ineffective assistance of counsel in two respects: first, he claims his attorney did not provide him with the presentence report before the sentencing hearing; and second, he says his attorney failed to explain to him the effect of being a career offender under the sentencing guidelines. For the reasons set forth, the court concludes the motion should be denied.

## I. Background.

Defendant pled guilty to a single-count indictment charging unlawful possession with intent to distribute 50 grams or more of a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). He was represented by his retained attorney, Steven D. Mank. The court found defendant's plea was knowing and voluntary after conducting a Rule 11 hearing at which defendant was examined under oath.

The Petition to Enter a Plea of Guilty (Doc. 30) signed by defendant when he pled guilty included the following representations: that defendant was guilty of the offense charged; that he understood the rights he was giving up by pleading guilty; that his lawyer informed him a plea of guilty could subject him to a term of not less than 5 years and not more than 40 years' imprisonment; that except as provided in the plea agreement no government agent had promised or predicted he would receive a lighter sentence for pleading guilty, and if anyone else including his attorney did, he knew they had no authority to do so; that the sentence was solely a matter within the control of the judge; that the court was not bound by the terms of the plea agreement; and that the plea of guilty was entered freely and voluntarily and was not the result of any promises made to defendant other than those in the petition.

Defendant's plea agreement with the government (Doc. 31) contained similar representations, including: that defendant understood the potential punishment was a mandatory minimum term of 5 years and a maximum possible term of 40 years' imprisonment; that although the parties were asking for a guideline sentence, this

request was not binding on the court; that the sentence would be determined solely by the court; and that defendant was giving up any right to appeal or collaterally attack his conviction or sentence, with certain exceptions including claims for ineffective assistance of counsel.

The court reviewed these and other matters with defendant at the Rule 11 hearing. (Doc. 51). Among other things the court reviewed the guidelines generally and discussed the government's agreement to recommend a sentence at the low end of the guideline range. The court noted:

> As far as a low end guideline sentence, I don't know. I have – I don't know anything about you, so I won't know what kind of sentence to give in terms of a guideline sentence, certainly, until the day of sentencing, I'll listen to the Government's recommendations. I don't always follow them.

Doc. 51 at 10.

The court explained that defendant was "facing a mandatory five-year sentence. That means at least five years in the penitentiary. It can be more because you're facing up to 40 years, and the guidelines factor in there; but whatever the guideline sentence would be in this case, it can't be less than five years." (Doc. 51 at 11). The court noted the possibility of a 5K1 motion in the plea agreement but made clear it was up to the government whether or not to file one, and in any event the sentence was still up to the court:

> The point here is that I don't know what sentence you're going to receive in this case, and I won't know, and I don't make up my mind until the day of sentencing because whatever the [presentence] report says, whatever the substantial assistance motion might say, I won't decide until I've heard from the lawyers at sentencing, from you if you

> want to address me, from any witnesses that you
> might have, any other information that you might
> want to bring to my attention. All I'm saying
> today, to put it in a nutshell, is you're facing
> at least five years in the federal penitentiary,
> up to 40 years, and you cannot, as you sit here
> today, count on the Government filing a
> substantial assistance motion, or if it does,
> that I'll grant it.

Doc. 51 at 13. After confirming that defendant had talked to his

lawyer about the sentence he might receive, the court noted:

> THE COURT: You understand that his job is to
> advise you about sentencing; but he can't promise
> you a sentence and hasn't promised you a
> sentence, has he?
>
> DEFENDANT: No.
>
> THE COURT: But whatever sentence you get in this
> matter – and this is what Paragraph 10 says – you
> can't then ask to withdraw your plea of guilty
> and have a trial. You understand that?
>
> DEFENDANT: Yes.

Doc. 51 at 14. Defendant entered a plea of guilty after acknowledging

all of these matters.

A probation officer prepared a presentence report (PSR). (Doc.

32). Defendant's base offense level would have been 28 based on the

amount of cocaine in his possession, but because of his prior

convictions he qualified as a career offender. The result was an

enhanced offense level of 34. (USSG §4B1.1(b)). Reductions for

acceptance of responsibility made the total offense level 31.

Defendant's criminal history category was VI, both because of the

number of prior convictions and because of an enhancement applicable

to all career offenders. (USSG §4B1.1(b)). The resulting advisory

guideline range for imprisonment was 188-235 months.

No objections to the PSR were filed. On April 14, 2013, the

-4-

defense moved to continue the sentencing because of "an issue regarding the [government's] sentencing recommendation." Doc. 34. Defense counsel subsequently filed a motion for downward departure. Doc. 38. The court twice extended the sentencing date.

At the outset of the sentencing hearing on May 20, 2013, defendant said he had not had an opportunity to read the PSR and review it with Mr. Mank. The court then took a recess of approximately 40 minutes while defendant met with Mr. Mank to go over the PSR. After the recess defendant asserted that he still did not understand "how he got jumped from ... like five years to 15 or maybe even 20" based on his criminal history. Doc. 52 at 6.

The court asked defendant whether he disputed the convictions listed in the PSR, noting that "if you didn't commit those crimes, if you weren't convicted of those crimes, then we need to know that." Defendant twice confirmed that he had been convicted of those offenses. Doc. 52 at 7, 11. The court explained the criminal history calculation under the guidelines and the enhanced offense level for career offenders. Defendant said he understood and had no questions about the calculation, but said he took the plea "thinking I was maybe [going to] get 5 years." Doc. 52 at 12. After acknowledging that he understood at the time of the plea that his guideline had not yet been determined, that the sentence could be anywhere from 5 to 40 years, and that no one had promised him any particular sentence, defendant said his complaint was that "I guess that plea that we took didn't follow through like it was supposed to" and "I thought I was going to get a downward departure" but "I guess it didn't work out." Doc. 52 at 14. Counsel for defendant and for the government both explained

that defendant had undergone a debriefing with DEA in hopes of obtaining a 5K1 motion, and that agents were initially enthusiastic about the potential for his assistance, but DEA supervisors ultimately concluded they could not risk having defendant out on the street to assist them. Defendant said he understood that the prospect of a 5K1 in the plea agreement had not been a guarantee, but "I just thought that -- I kind of thought that, yeah, that [the sentence] was going to go under the minimum of five, or stay at five. That's what -- that's what I kind of [understood] but --." Doc. 52 at 16.

At the sentencing hearing, counsel for the government pointed out that in correspondence to defense counsel before the plea, the government stated it believed defendant would qualify as a career offender. The government then recommended a sentence of 188 months, at the low end of the guideline range. In response, Mr. Mank noted defendant was having difficultly with the enhanced offense level in part because of DEA's initial interest in using defendant's assistance. Mr. Mank asked for a sentence in the range of 110-137 months, which would have been defendant's applicable range without a career offender enhancement. Mr. Mank added:

> I think initially one of the concerns that Mr.
> King had -- and perhaps I wasn't clear enough to
> him or with him -- when I looked at the quantity
> table of drugs, I indicated that he was looking
> somewhere in the minimum range or slightly above
> the minimum range based solely on the quantity.
> I did not properly explain to him his criminal
> history status or the impact of the PSI, what it
> would do to him. And so that may be some of my
> fault.

Doc. 52 at 19.

The court imposed a sentence of 188 months imprisonment.

-6-

Defendant filed a direct appeal, but the Tenth Circuit granted the government's motion to dismiss the appeal based on the waiver in the plea agreement. The circuit noted that any claims for ineffective assistance of counsel relating to negotiation of the plea agreement should be brought in a §2255 motion. United States v. King, 530 Fed.Appx. 842 (10th Cir., Aug. 14, 2013). Defendant timely filed his §2255 motion on July 14, 2014. (Doc. 57).

**II. Discussion.**

To succeed on a claim for ineffective assistance of counsel[1], a defendant must make two showings: (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficiency prejudiced the defense. Davis v. Workman, 695 F.3d 1060, 1071 (10th Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Defendant's first claim is that his attorney was ineffective because he allegedly did not send the PSR to defendant or review it with him prior to sentencing.[2] Doc. 57 at 3. As a result, defendant claims, he did not have enough time to time to review the report, he was unable to challenge the convictions listed in the report, and he

---

[1] The government does not argue that defendant's claims are barred by the waiver in the plea agreement. That concession is appropriate given the waiver's language that "the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel...." Doc. 31 at 7.

[2] Mr. Mank asserted at the sentencing hearing that he had reviewed the guideline points with defendant, had gone over his criminal history, and had basically reviewed with defendant the information contained in the PSR. Doc. 52 at 4. For purposes of the instant motion, however, the court accepts the truth of defendant's allegation that he did not see the PSR until the sentencing hearing.

was unable to make objections to the report.

Any asserted prejudice from counsel's alleged failure is either refuted by the record or unsupported by factual allegations. The record shows that a recess lasting about 40 minutes was taken at the outset of the sentencing hearing so defendant could confer with his lawyer about the PSR. When defendant returned and engaged in a discussion with the court, he said he understood how his guideline was calculated. He did not say he needed more time to review the report. He specifically admitted the prior convictions listed in the PSR. Even now he does not claim he was not convicted of those offenses. He only says he was not given an opportunity to challenge them -- an assertion that is clearly contrary to the record. The record shows defendant was given time to review the report with his counsel, he was given an opportunity to object to the prior convictions, and he was given an opportunity to object to anything else in the report. (Defendant in fact objected at sentencing to the PSR's summary of his child support obligations. Doc. 52 at 10.). After the court went through all of the foregoing matters with him at the sentencing hearing, defendant represented that he had no other comments about the report and that his problems with Mr. Mank were "cleared up with the presentence report." Doc. 52 at 13. Defendant identifies nothing else in the PSR that he could have objected to. In sum, the record shows defendant suffered no prejudice from his attorney's alleged failure to review the PSR with him prior to the sentencing hearing.

Defendant's second claim is based on his attorney's statement that he (the attorney) was at fault for "not properly explain[ing]" his criminal history status and the effect of the PSR. Even if the

court assumes that counsel's advice about the guidelines was deficient[3], this claim also lacks any showing of prejudice. In the context of a guilty plea, the prejudice requirement means a defendant must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

Defendant's motion appears to claim that, were it not for his attorney's assessment of the likely guideline range, he "would have never [taken] the plea" Doc. 57 at 4. Under a very liberal construction this could be considered an allegation that defendant would have insisted on going to trial had his attorney explained how career offender status would enhance his guideline range.[4] (Although in his §2255 motion defendant's requested relief is that a "new plea deal be [granted]." Doc. 57 at 11). Even so, this unsupported

---

[3] Some case law holds that a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel. <u>United States v. Gigley</u>, 213 F.3d 509, 517, n.3 (10th Cir. 2000) (<u>citing</u> <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993)). But "counsel's failure 'to understand the basic structure and mechanics of the sentencing guidelines' can rise to deficient performance under <u>Strickland</u>." <u>United States v. Parker</u>, 720 F.3d 781, 788 (10th Cir. 2013); <u>United States v. Washington</u>, 619 F.3d 1252 (10th Cir. 2010). The dividing line between these two is not clear, but for purposes of this ruling the court will assume that a failure to explain the career offender enhancement, at a time when counsel knew there was a basis for the enhancement, was deficient.

[4] Defendant does not specifically allege that his counsel failed to explain the career offender enhancement before the guilty plea. Nor is such a fact entirely clear from counsel's admission that he did "not properly explain" the effect of criminal history to defendant. The latter might have been nothing more than counsel's polite way of saying defendant had evidently misunderstood or forgotten his explanation of the guidelines. But because the record is not clear as to what counsel advised defendant, the court accepts defendant's version of events in determining whether or not a hearing on the motion is warranted.

allegation is insufficient to show prejudice from counsel's advice. Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (a defendant's mere allegation that he would have insisted on trial but for his counsel's errors is necessary but insufficient to entitle him to relief); United States v. Watson, Slip Op. at 12, No. 12-5104, (10th Cir., Sept. 11, 2014) (defendant's "mere self-serving statement, which does no more than open the door to conjecture, is not enough").

In United States v. Hamilton, 510 F.3d 1209 (10th Cir. 2007), the defendant complained that his attorney failed to inform him about the career offender enhancement. The enhancement increased defendant's minimum guideline sentence from 15 years to 26 years. The Tenth Circuit concluded there was no showing of prejudice despite defendant's allegation that he would not have pled guilty had he known about the increase. The court pointed to defendant's acknowledgments at the time of the plea hearing that the court alone would determine the sentence, that the court could impose a sentence much greater than defendant expected, and that any estimate of the sentence was not a promise. "In light of the court's careful explanation of the plea's consequences and [defendant's] testimony that he understood those consequences, [defendant's] allegation that he would have gone to trial but for his attorney's failure to advise him of the career-offender provision is insufficient to establish prejudice." Hamilton, 510 F.3d at 1216. See also United States v. Noble, 350 Fed.Appx. 305 (10th Cir. 2009) (attorney's failure to inform defendant of career offender enhancement was not deficient because it resulted from defendant's failure to inform attorney about his prior convictions; defendant additionally failed to demonstrate reasonable probability

he would have gone to trial had he known of the enhancement). <u>Cf</u>. <u>United States v. McCoy</u>, 215 F.3d 102, 108 (D.C. Cir. 2000) (defendant who was misinformed by counsel about the effect of career offender enhancement and who was not informed by the court of the maximum penalty for the offense showed reasonable probability that he would have gone to trial).

Defendant offers no factual support for his claim that he would have rejected the government's plea offer had he known about the career offender enhancement. He does not address why he would have insisted on a trial in spite of the strength of the government's evidence against him. That evidence apparently included a video recording and eyewitness testimony from a traffic stop showing him in possession of a bag containing crack cocaine, as well as an alleged confession following his arrest in which he admitted possessing the cocaine with the intent to distribute it. <u>See</u> Doc. 32 at 4-5. <u>Cf</u>. <u>Miller</u>, 262 F.3d at 1074 (strength of government's case may be considered as circumstantial evidence of the likelihood that defendant would go to trial); <u>Hill v. Lockhart</u>, 474 U.S. at 60 (defendant failed to show prejudice from his attorney's faulty advice about parole eligibility; defendant alleged no alleged no special circumstances to support a conclusion that he placed special emphasis on parole eligibility in deciding whether to plead guilty). Although the increase in defendant's guideline range from being a career offender is admittedly a substantial one, defendant does not explain why the increased range would have made a difference in his decision, given that he was willing to plead despite knowing that the court was not bound by the guidelines and that he was facing a sentence of up to

-11-

forty years.

Defendant does not deny pleading guilty knowing it was entirely up to the court to determine his sentence. He knew he could get a sentence of anywhere from five to forty years. He does not dispute knowing that a final guideline range could not even be determined until after he pled guilty and a presentence investigation was done. Nor does he dispute knowing that the guideline range was only advisory and was not binding on the court. Defendant specifically represented at the time of his plea that he knew any guideline prediction from his attorney was not a promise and, as the court told him, "whatever you get in this matter ... you can't then ask to withdraw your plea of guilty and have a trial." Knowing all of the foregoing, defendant still voluntarily entered a guilty plea. He offers no facts in his motion to show a reasonable probability that knowing about the career offender enhancement would have altered that decision and would have led him to insist on a trial. As such, there is no showing of prejudice from counsel's alleged error.

**III. Conclusion**.

Because the motion and record of the case conclusively show defendant is entitled to no relief, defendant's motion under 28 U.S.C. § 2255 (Doc. 57) is denied.

IT IS SO ORDERED.

Dated this 22nd day of September 2014, at Wichita, Kansas.

s/Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE

-12-